IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

QSRSOFT, INC.              )
                           )
        Plaintiff,         )
                           )
    v.                     )   No. 06 C 2734
                           )
RESTAURANT TECHNOLOGY, INC.,)
et al.,                    )
                           )
        Defendants.        )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Restaurant Technology, Inc.'s ("RTI") partial motion to dismiss Counts IV, V, and VII. For the reasons stated below, we deny RTI's motion to dismiss to the extent that it relates to Counts IV and VII, and grant the motion to dismiss to the extent that it relates to Count V.

## BACKGROUND

Plaintiff QSRSoft, Inc. ("QSRSoft") developed the DotComm System, an internet-based computer system that assists McDonald's restaurant franchise owners and operators ("franchisees") in analyzing information collected from the restaurants. QSRSoft contends that the DotComm System differs from other

1

competitors' systems in that it more quickly collects and processes information from restaurants, provides automatic information transfer backup, and provides underlying detail or reports. QSRSoft alleges that if a franchise wants to use the DotComm System, the franchisee must first obtain a licensing agreement, which includes a provision that only key management personnel are permitted to access the DotComm System due to its proprietary nature. According to QSRSoft, a franchisee is provided with the opportunity to evaluate the DotComm System for thirty days under the terms of a software evaluation licensing agreement. QSRSoft contends that once the franchisee agrees to the licensing agreement and identifies a list of the key personnel that will have access to the DotComm System, QSRSoft sends the franchisee an access code and unique password. QSRSoft alleges that the DotComm System automatically instructs the user to change the password during the first time the franchisee accesses the system. According to QSRSoft, the franchisee informs QSRSoft of the updated password.

QSRSoft claims that in January 2006, RTI, who provides predominantly accounting software to fast food restaurants, contacted F.A.F., Inc. d/b/a McDonald's Restaurant ("FAF"), which operates nine McDonald's restaurants in Fargo, North Dakota, to obtain information from QSRSoft about the DotComm System. QSRSoft contends that in February 2006, FAF's director of operations contacted QSRSoft about evaluating the DotComm System in one of FAF's McDonald's restaurants. QSRSoft claims that it subsequently sent a licensing

2

agreement ("Agreement") to FAF and requested that the Agreement be executed and returned to QSRSoft. QSRSoft further alleges that on February 8, 2006, QSRSoft sent an access code and password to FAF in anticipation of receiving the executed Agreement from FAF. Although FAF did not return the Agreement, QSRSoft contends that FAF understood that FAF was accepting the terms of the Agreement and would use the DotComm System subject to such terms. QSRSoft claims that on February 8, 2006, FAF accessed the DotComm System using the newly provided access code and password, a process that required FAF to change the initial password. According to QSRSoft, on or about February 9, 2006, FAF provided RTI the access code and the recently changed password ("FAF password").

QSRSoft alleges that RTI used the FAF password from February 2006 until April 30, 2006 in order to gain access to the DotComm System, view, download, save, print, and copy each web page on the DotComm System, as well as to download the QSRSoft Data Engine, the backbone of the DotComm System's ability to extract restaurant information. QSRSoft claims that RTI was able to use the information it received from accessing the DotComm System to develop RTI REPORTS+, a similar RTI product for McDonald's franchises.

On August 8, 2006, QSRSoft filed an amended complaint that includes claims alleging copyright infringement under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* brought against RTI (Count I), James H. Clutter ("Clutter") (Count II), and J. Neal Starkey ("Starkey") (Count III), claims alleging violations of the Illinois Trade

Secret Act, 765 ILCS 1065/1 *et seq.*, ("ITSA") brought against RTI, Clutter, and Starkey (Count IV), conversion claims brought against RTI, Clutter, and Starkey (Count V), tortious interference with prospective business advantage claims brought against RTI, Clutter, and Starkey (Count VI), and tortious interference with contract claims brought against RTI, Clutter, and Starkey (Count VII). RTI now moves to dismiss Counts IV, V, and VII.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). The allegations of a complaint should not be dismissed for a failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Baker v. Kingsley*, 387 F.3d 649, 664 (7th Cir. 2004)(stating that although the "plaintiffs' allegations provide[d] little detail [the court could not] say at [that] early stage in the litigation that plaintiffs [could] prove no set of facts in support of their claim that would entitle them to relief"). Nonetheless, in order to

withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High Sch.*, 144 F.3d 448, 454-55 (7th Cir. 1998). Under the current notice pleading standard in federal courts, a plaintiff need not "plead facts that, if true, establish each element of a 'cause of action . . . .'" *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)(stating that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements comes later"). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002); *Kyle*, 144 F.3d at 455. However, any conclusions pled must "provide the defendant with at least minimum notice of claim," *id.*, and the plaintiff cannot satisfy federal pleading requirement merely "by attaching bare legal conclusions to narrated facts which fail to outline bases of [his] claims." *Perkins*, 939 F.2d at 466-67. The Seventh Circuit has explained that "[o]ne pleads a 'claim for relief' by briefly describing the events." *Sanjuan*, 40 F.3d at 251.

**DISCUSSION**

I. Illinois Trade Secret Act Claim (Count IV)

RTI contends that QSRSoft's ITSA claim in Count IV must be dismissed since QSRSoft disclosed its trade secret to a third-party. Under the ITSA, trade secret misappropriation occurs when: (1) there is a trade secret; (2) the trade secret

5

is misappropriated by the defendant; and (3) the defendant used the trade secret for business purposes. *See Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1265-66 (7th Cir. 1992)(citing 765 ILCS 1065/2). The ITSA defines a trade secret as:

> [I]nformation, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:
> (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and
> (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

765 ILCS 1065/2(d). The ITSA therefore "precludes trade secret protection for information generally known or understood within an industry even if not to the public at large," *Pope v. Alberto-Culver Co.*, 694 N.E.2d 615, 617 (Ill. App. Ct. 1998), and "requires a plaintiff to take 'affirmative measures' to prevent others from using information." *Jackson v. Hammer*, 653 N.E.2d 809, 816 (Ill. App. Ct. 1995); *see Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 722 (7th Cir. 2003)(noting that the ITSA "prevents a plaintiff who takes no affirmative measures to prevent others from using its proprietary information from obtaining trade secret protection").

RTI argues that since QSRSoft allowed FAF to access the DotComm System without a valid licensing agreement, QSRSoft's intellectual property has fallen into

the public domain and is no longer considered a trade secret. However, QSRSoft has sufficiently pled numerous affirmative measures that prevent outsiders from learning the inner workings of the DotComm System. First, QSRSoft alleges that its trade secrets are located on a password protected website, which is not accessible to the public or QSRSoft's competitors. Second, QSRSoft alleges that it does not allow public access to the DotComm System and contends that customers are required to abide by licensing agreements before QSRSoft provides the required access codes and passwords to access the DotComm System. Third, QSRSoft alleges that it uses licensing agreements to restrict access to the DotComm System to "key management people who work for the [franchisee]." (A. Compl. Par. 9). QSRSoft further requires the franchisee to inform QSRSoft of the specific restaurant and specific persons authorized by the franchisee to access the DotComm System. Fourth, QSRSoft has never released the DotComm System to the public at large. Fifth, QSRSoft maintains control of DotComm System access by requiring the licensee to inform QSRSoft of the updated password once the franchisee accesses the DotComm System. Finally, as discussed below, QSRSoft has pled sufficient facts to intimate that it is reasonably possible that a valid agreement exists between QSRSoft and FAF, thus limiting the exposure to key FAF personnel rather than to the public at large.

To support its contention, RTI notes that in *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984), "the United States Supreme Court has stated *expressly* that

trade secrets are extinguished" when provided to a third-party that is not obligated to protect the confidentiality of the trade secrets. (Mot. 7)(emphasis in motion). RTI contends that the Supreme Court has stated:

> Because of the intangible nature of a trade secret, the extent of the property right therein is defined by the extent to which the owner of the secret protects his interest from disclosure to others. Information that is public knowledge or that is generally known in an industry cannot be a trade secret. *If an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished.*

(Mot. 7)(citing *Ruckelshaus*, 467 U.S. at 1002)(emphasis in motion). If the Supreme Court had been speaking directly of a single third-party disclosure of a trade secret, this quotation would be persuasive. However, in *Ruckelshaus*, the Supreme Court was faced with the question of whether the Takings Clause of the Fifth Amendment applied to the Environmental Protection Agency's ("EPA") public disclosure of a trade secret, an intangible property, in the same way it would to tangible property. 467 U.S. at 1001-02. The particular phrase cited by RTI was used by the Supreme Court to compare trade secrets to tangible property in finding that the plaintiff, Monsanto, had a property right that is protected by the Takings Clause since trade secrets have many of the characteristics of tangible property. *Id.* at 1001-04. Thus, the statement referred to by RTI is not a "clear" statement that any disclosure to a third-party waives a trade secret, but rather is a general statement of the law. (Mot. 4).

Additionally, RTI directs the court to *Skoog v. McCray Refrigerator Co.*, 211

F.2d 254, 257 (7th Cir. 1954) and argues that QSRSoft's degree of disclosure extinguished QSRSoft's trade secret. In citing *Skoog*, RTI notes that "[t]he Seventh Circuit has similarly found that the disclosure of a trade secret to those under no obligation to protect its confidentiality destroys the trade secret." (Mot. 8). However, in *Skoog*, the court found that the defendant could not misappropriate the trade secret at issue, a refrigerated cabinet, because the trade secret was no longer hidden from the public. 211 F.2d at 257-58. Specifically, the trade secret was extinguished because the plaintiff's refrigerated cabinet had been in unrestricted use in the plaintiff's grocery store, visible to anyone that entered the store, and the defendant had expressly stated that it did not accept the plaintiff's non-disclosure agreement. *Id.* The instant action is distinguishable from *Skoog*. Based on the pleadings, we find that QSRSoft has sufficiently pled that its trade secrets have been hidden from the general public and competitors through use of licensing agreements and a password protected website. *See Stampede Tool Warehouse, Inc. v. May*, 651 N.E.2d 209, 216 (Ill. App. Ct. 1995)(finding that trade secret had not been waived when reasonable efforts were taken to protect secrecy of trade secrets from competitors); *cf. Skoog*, 211 F.2d at 257 (stating that it is "well established that there can be no confidential disclosure where there has been a prior disclosure to the *public without reservation*")(emphasis added).

RTI also argues that *Web Communications Group, Inc. v. Gateway 2000, Inc.*, 889 F. Supp. 316, (N.D. Ill. 1995), supports the proposition that QSRSoft did not

make reasonable efforts to protect its trade secret. (Mot. 8)(stating that *"this [c]ourt has found that under the [ITSA], the failure of [sic] party to protect the confidentiality of its trade secret will subject that claim to dismissal as a matter of law"*)(emphasis in motion). In *Web Communications*, the court held that the plaintiff's trade secret misappropriation claim failed "because [plaintiff] took virtually no steps to protect the confidentiality" of the trade secret, a stepped advertising insert. 889 F. Supp. at 320. In finding that virtually no reasonable efforts had been taken, the court noted that none of the documents relating to the trade secret were marked as confidential (as was the plaintiff's policy with trade secrets), there was not a confidentiality agreement with the defendant, the plaintiff disclosed "either dummies or specifications" for the trade secret at issue to suppliers and competitors, and the plaintiff's president acknowledged that the competitor would be able to use the disclosed information for its own benefit. *Id.* RTI argues that QSRSoft's efforts to protect its trade secrets are identical to that of the plaintiff in *Web Communications*. However, unlike the plaintiff in *Web Communications* that "took virtually no steps to insure the confidentiality of the stepped insert," *id.* at 320, QSRSoft has pled a number of reasonable efforts to protect its trade secret, including the use of licensing agreements and a password protected website. Therefore, because QSRSoft has sufficiently pled the existence of a trade secret, and the trade secret has not been waived, we deny RTI's motion to dismiss to the extent that it relates to Count IV.

Additionally, we remind RTI that in ruling on a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of the pleadings rather than decides the merits of the claims. As the court has stated, we draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *McMillan v. Collection Prof'ls, Inc.*, 455 F.3d 754, 758 (7th Cir. 2006). In evaluating the sufficiency of the pleadings, the court cannot make factual inquiries. Arguments based on the merits of the case that ask this court to make factual inquires into the sufficiency of the evidence, as RTI does throughout its briefs, are more appropriate at the summary judgment stage.

## II. Conversion Claim (Count V)

RTI argues that QSRSoft's conversion claim in Count V is preempted by the ITSA and moves to dismiss Count V. Section 8(a) of the ITSA reads: "[T]his Act is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret." 765 ILCS 1065/8(a). The ITSA abolishes all common law causes of action based upon a theory of trade secret misappropriation, except for breach of contract actions. *See Composite Marine Propellers, Inc.*, 962 F.2d at 1265 (stating that "Illinois has abolished all common law theories of misuse" of trade secret information and that "[u]nless defendants misappropriated a (statutory) trade secret, they did no legal

11

wrong"). Thus, if a cause of action can otherwise be brought under the ITSA, that cause of action is preempted. *AutoMed Techs., Inc. v. Eller*, 160 F.Supp.2d 915, 922 (N.D. Ill. 2001).

QSRSoft contends that Count V is not preempted since it seeks recovery based on RTI's conversion of "confidential, proprietary, and valuable" information that does not "rise to the level of trade secrets." (Resp. 12). However, QSRSoft's argument is contradicted by the intellectual property claimed by QSRSoft in Counts IV and V. In Count V, QSRSoft alleges that RTI converted QSRSoft's "Proprietary Materials" located in the DotComm System, including:

> a) the source code;
> b) the Data Engine;
> c) the 100+ web-page displays . . . ;
> d) the Specific ISP Data; and
> e) the type and method of polling the DotComm System utilizes.

(A. Compl. Par. 67). These "Proprietary Materials" are identical to the trade secrets that QSRSoft alleges that RTI misappropriated in Count IV, which reads:

> The following items located in Plaintiff's password protected DotComm System are confidential and proprietary, and constitute Plaintiff's trade secrets (collectively, "Trade Secrets"):
> > a) the source code;
> > b) the Data Engine;
> > c) the 100+ web-page displays . . .;
> > d) the Specific ISP Data; and
> > e) the type and method of polling the DotComm System utilizes.

(A. Compl. Par. 57). By pleading in the alternative, QSRSoft's claim for conversion of its "Proprietary Materials" is simply another way of claiming that RTI

misappropriated QSRSoft's intellectual property, for which the ITSA is the sole remedy. Thus, QSRSoft's claim for conversion is preempted by the ITSA and we grant RTI's motion to dismiss Count V.

III. Tortious Interference with Contract Claim (Count VII)

RTI moves to dismiss QSRSoft's claims for tortious interference with contract on the basis that QSRSoft did not have a valid enforceable licensing agreement with FAF. Under Illinois law, elements for a *prima facie* case for tortious interference with contract claim are:

> (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by defendant's wrongful conduct; and (5) damages.

*Voelker v. Porsche Cars North Am., Inc.*, 353 F.3d 516, 527-28 (7th Cir. 2003)(citing *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 676 (Ill. 1989)).

RTI argues that since the Agreement sent to FAF was not signed by representatives from either QSRSoft or FAF, was not dated by the parties, and did not reference FAF, that there was never a formally executed contract with which RTI could interfere. QSRSoft responds that its allegation that FAF understood that it would be bound by the Agreement was sufficient to establish the existence of an oral contract. The court finds the arguments by both parties unpersuasive.

QSRSoft alleges that on February 8, 2006, FAF requested that QSRSoft implement the DotComm System in FAF's Fargo, North Dakota McDonald's restaurant ("Fargo Restaurant") in order to evaluate the software. QSRSoft also contends that thereafter, QSRSoft sent FAF the Agreement, which contained confidentiality, non-disclosure, copyright, and licensing statements. QSRSoft also contends that it requested that FAF execute and return the agreement in return for an access code and password, which would allow FAF operations personnel at the Fargo Restaurant to access the DotComm System. Additionally, QSRSoft alleges that on February 8, 2006, QSRSoft sent an access code and password to FAF. QSRSoft further alleges that on that day, FAF personnel accessed the password protected website using the access code and password delivered by QSRSoft. The following day, FAF allegedly informed QSRSoft of the updated access code and the recently changed password. According to QSRSoft, however, FAF did not return the Agreement.

The pleadings do not indicate the existence of either an express written contract or an express oral contract, as QSRSoft suggests, between QSRSoft and FAF. However, the court finds that the pleadings do contain facts from which we can reasonably infer the existence of an implied-in-fact contract. An implied-in-fact contract is one in which an agreement may be inferred by performance of the parties. *Wood v. Wabash County*, 722 N.E.2d 1176, 1179 (Ill. App. Ct. 1999). Furthermore, an implied-in-fact contract must contain all the elements of an express contract.

14

*Razdan v. General Motors Corp.*, 2000 WL 1205990, at *2 (7th Cir. 2002)(Table of Decisions Without Reported Opinions)(citing *Foiles v. North Greene Unit Dist. No. 3*, 633 N.E.2d 24, 27 (Ill. App. Ct. 1994)). Thus, for an implied-in-fact contract to be valid, the contract "must contain offer, acceptance, and consideration." *Halloran v. Dickerson*, 679 N.E.2d 774, 782 (Ill. App. Ct. 1997).

Drawing all reasonable inferences in favor of QSRSoft, the court finds sufficient facts in the amended complaint that indicate the existence of an implied-in-fact contract between QSRSoft and FAF. Alleging that FAF understood "that they were accepting and would use the access code and password subject to the terms of the license agreement," (A. Compl. Par. 25), that FAF accessed the website and changed the password on February 8, 2006, and that FAF subsequently informed QSRSoft of the updated account and password information on February 9, 2006, QSRSoft provides sufficient facts to infer that an implied-in-fact contract existed between the parties and that FAF intended to be bound by the terms of the Agreement.

RTI argues that the attached licensing agreement to the amended complaint establishes that QSRSoft's claim for tortious interference with contract must fail because the attached agreement is not formally executed. For the purpose of Rule 12(b)(6) motions, a "copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes" if the document is referred to in the complaint and is integral to the claims in the complaint. Fed. R. Civ. P. 10(c); *Rosenblum v.*

15

*Travelbyus.com Ltd.*, 299 F.3d 657 (7th Cir. 2002)(citing *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)); *see Beam v. IPCO Corp.*, 838 F.2d 242, 244 (7th Cir. 1988)(stating that any exhibits attached to a complaint must be incorporated into the pleading). The use of exhibits to determine the sufficiency of the evidence is "aimed at cases interpreting, for example, a contract." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998); *see also Centers v. Centennial Mortgage, Inc.*, 398 F.3d 930 (7th Cir. 2005)(using attached document to construe assignment agreement). RTI contends that since the attached licensing agreement represents "a true and correct copy of the contract" sent to FAF, and the attached contract is not signed by the parties to be bound, does not contain a date, and does not reference FAF, QSRSoft admits that no valid contract between the parties exists (Mot. 5-6). We disagree.

Although QSRSoft makes reference to the attached licensing agreement, the particular attachment is not pertinent to construing the material terms of a contract between QSRSoft and RTI, nor is it integral to the claim for tortious interference with contract. Additionally, this court is allowed to "independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material." *Rosenblum*, 299 F.3d at 661. This court has previously stated that QSRSoft has sufficiently pled the elements which may infer the existence of an implied-in-fact contract, the terms of which are contained in the attached licensing agreement. After reviewing the attachment in question, we are satisfied that the

attached licensing agreement reasonably could be a representation of the Agreement that QSRSoft delivered to FAF, rather than the specific Agreement intended to show that an express contract existed.

RTI directs the court to *Baker v. Daniel S. Berger, Ltd.*, 753 N.E.2d 463 (Ill. App. Ct. 2001) and *Bloomington Partners, LLC v. City of Bloomington*, 2005 WL 3536340 (C.D. Ill. 2005) to support the contention that QSRSoft did not have a valid enforceable Agreement with FAF. The citations by RTI, however, are unpersuasive. RTI states that in *Baker*, "the court rejected plaintiff's claim for tortious interference with contract when a copy of the contract attached to the complaint was not signed . . . ." (Mot. 6). However, in *Baker*, the document in question was a non-compete clause in an employment contract rather than a claim for tortious interference with contract as RTI claims. 753 N.E.2d at 465. Additionally, the issue before the court was whether sanctions should be leveled for a violation of Illinois Supreme Court Rule 137 because the complaint was not warranted under existing law. *Id.* at 468. The court found sanctions appropriate because the plaintiff knew that there was no basis for which to bind the parties and, as such, the plaintiff was aware that there was no basis for filing the lawsuit. *Id.* at 470-72. Thus, *Baker* is distinguishable, if not off point, from the issues before this court.

RTI also notes that the *Bloomington Partners* court "affirmed dismissal of [a] complaint where the agreement attached to the amended complaint was not signed and thus '. . . never became an executed, enforceable contract.'" (Mot. 6)(quoting

*Bloomington Partners*, 2005 WL 3536340, at *12). However, RTI's support for this claim is to a magistrate judge's recommendation, which was not followed by the district court. *Bloomington Partners*, 2005 WL 3536340, at *6. In *Bloomington Partners*, the district court rejected the magistrate judge's recommendation and granted the city of Bloomington City Manager's motion to dismiss because the court found the defendant immune from liability under the Tort Immunity Act. *Id.* at *5. Additionally, the district court rejected the magistrate judge's recommendation, which was based on the district court's prior ruling on the plaintiff's motion for a temporary restraining order and a preliminary injunction that stated that there had never been an executed enforceable contract. *Id.* Specifically, the district court found that the ruling on the plaintiff's motion was not a final determination on the merits. *Id.* After rejecting the magistrate judge's recommendation, the district court denied the motion to dismiss because there was no final determination as to the existence of an enforceable contract. *Id.* at 5-6. Thus, RTI's citation and quotations from a magistrate judge's recommendation, which was not adopted by the district court judge in *Bloomington Partners*, is unpersuasive.

Therefore, at this stage in the litigation, we find that QSRSoft has made sufficient allegations to survive a motion to dismiss Count VII and, thus, we deny RTI's motion to dismiss to the extent that it relates to QSRSoft's claim for tortious interference with contract. We note once again that this court is not deciding the merits of QSRSoft's claim against RTI for tortious interference with contract. RTI's

repeated arguments that QSRSoft's claims are not meritorious are more appropriate at the summary judgment stage. As such, QSRSoft will need to point to sufficient evidence supporting its allegations, which are accepted as true at this stage in the litigation, in order to survive a motion at the summary judgment stage.

## CONCLUSION

Based on the foregoing analysis, we deny RTI's motion to dismiss to the extent that it relates to Counts IV and VII, and grant the motion to dismiss to the extent that it relates to Count V.

                                    _____
                                    Samuel Der-Yeghiayan
                                    United States District Court Judge

Dated: October 18, 2006